**United States District Court**
For the Northern District of California

1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

6                            SAN JOSE DIVISION

7                                          CASE NO. 5:12-cv-04068 EJD
  IN RE:
8                                          [In re David Gary O'Hanneson, Case No. 12-
  DAVID GARY O'HANNESON,                   53343 ASW, Adv. Proc No. 12-05144 ASW]
9

10          Debtor.                        **ORDER GRANTING MOTION TO**
                                           **WITHDRAW THE REFERENCE**
                              _____/
11
  HELLER SMALL BUSINESS LENDING
12 CORP.,                                  [Docket Item No(s). 1]

13
              Plaintiff(s),
14     v.

15 MICHAEL SMEAD, et. al.,

16
              Defendant(s).
17                            _____/

18        In this action related to a pending bankruptcy proceeding, Michael Smead, Susan Smead

19 ("the Smeads") and South Valley Auto Repair ("SVAP") move to withdraw the automatic

20 bankruptcy reference as it was applied to a removed state-court action.  See Docket Item No. 1.

21 David Gary O'Hanneson ("O'Hanneson"), the debtor in the underlying bankruptcy case, has filed

22 written opposition to the motion.  See Docket Item No. 13.  The court previously found this matter

23 suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and vacated the

24 associated hearing date.  Having now carefully reviewed the relevant documents, the court has

25 determined that the motion should be granted for the reasons stated below.

26                    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

27        The Smeads and O'Hanneson own real property located on Angela Street in San Jose,

28 California, as tenants in common.  See Req. for Judicial Notice ("RJN"), Docket Item No. 13, at Ex.

                                            1
  CASE NO. 5:12-cv-04068 EJD
  ORDER GRANTING MOTION TO WITHDRAW THE REFERENCE

United States District Court

For the Northern District of California

1   4.[1]  The primary tenant on the property is SVAP, which is also owned by the Smeads.  Id. at Exs. 3,

2   4.

3          On or about October 25, 2000, Heller Small Business Lending Corporation ("Heller") agreed

4   to make a loan to the Smeads and O'Hanneson pursuant to a written agreement.  Id. at Ex. 3.  In

5   exchange, the Smeads and O'Hanneson provided Heller with a Promissory Note in favor of Heller in

6   the amount of $3,224,000, which was secured by a first-position Deed of Trust recorded against the

7   Angela Street property.  Id.  SVAP also guaranteed the loan.  Id.  Thereafter, the Smeads and

8   O'Hanneson obtained another loan secured by a second-position Deed of Trust on the Angela Street

9   property for $1,000,000.  Id. at Ex. 4.

10         Under the terms of a partnership agreement between himself and the Smeads, O'Hanneson

11  was responsible for collecting rent payments from SVAP and the ten other tenants of the Angela

12  Street property as well as for making payments on both loans.  Id.  According to the Smeads,

13  however, they discovered in or about February, 2011, that O'Hanneson had not made payments on

14  the Heller loan for the prior twelve-month period, although he had been collecting rents from the

15  tenants.  Id.  Heller recorded a Notice of Default due to the non-payment on August 2, 2011.  Id.

16         These circumstances led to a web of litigation between the parties.  On August 10, 2011,

17  Heller filed a complaint in state court against the Smeads, O'Hanneson, and SVAP for judicial

18  foreclosure, appointment of receiver, specific performance and breach of guaranty.  Id. at Ex. 3.  The

19  Smeads and SVAP then filed a cross-complaint against O'Hanneson for breach of contract, breach

20  of fiduciary duty, breach of the duty of good faith and fair dealing, fraud and deceit, fraudulent

21  misrepresentation, conversion, professional negligence, unjust enrichment, and dissolution of

22  partnership and accounting.  Id. at Ex. 4.  For his part, O'Hanneson cross-complained against the

23  Smeads and SVAP for similar causes of action: breach of contract, breach of fiduciary duty, breach

24  of the duty of good faith and fair dealing, fraudulent misrepresentation, promissory estoppel,

25  negligence, conversion, unjust enrichment, and quantum meruit.  Id. at Ex. 5.  He also filed a

26  bankruptcy petition under Chapter 11 on May 1, 2012, and removed the entirety of the state court

27

28         [1] The RJN is GRANTED to the extent certain factual allegations are included for the purpose
    of establishing a context for this motion.  See Fed. R. Evid. 201.

2

CASE NO. 5:12-cv-04068 EJD
ORDER GRANTING MOTION TO WITHDRAW THE REFERENCE

1 action, including all cross-claims, to the Bankruptcy Court on July 16, 2012. This motion followed.

2

3 ## II.   LEGAL STANDARD

4 Generally, district courts have original and exclusive jurisdiction over all bankruptcy

5 matters, but may refer those actions arising under the bankruptcy statutes to a bankruptcy court. See

6 28 U.S.C. § 1334; see also 28 U.S.C. § 157(a).

7 The Smeads move to withdraw the reference to bankruptcy court pursuant to the provisions

8 of 28 U.S.C. § 157(d), which states:

9 > The district court may withdraw, in whole or in part, any case or
proceeding referred under this section, on its own motion or on timely
10 > motion of any party, for cause shown. The district court shall, on
timely motion of a party, so withdraw a proceeding if the court
11 > determines that resolution of the proceeding requires consideration of
both title 11 and other laws of the United States regulating
12 > organizations or activities affecting interstate commerce.

13 As the statute indicates, withdrawal of the bankruptcy reference can be mandatory or

14 permissive. See 28 U.S.C. § 157(d). This motion implicates the standard governing permissive

15 withdrawal. When examining whether to withdraw the reference as a matter of discretion, "a district

16 court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity

17 of bankruptcy administration, the prevention of forum shopping, and other related factors." Security

18 Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers, 124 F.3d 999, 1008 (9th

19 Cir. 1997). On this type of motion, like most others, the moving party bears the burden of

20 persuasion. Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc., 355 B.R. 214, 218 (D. Haw. 2006).

21 ## III.   DISCUSSION

22 Pursuant to Bankruptcy Local Rule 5011-1(a),[2] the state court action was automatically

23 referred to the Bankruptcy Court once it was removed by O'Hanneson. For this motion, at issue is

24 whether the court should withdraw this automatic reference. Relying primarily on Stern v. Marshall,

25 131 S. Ct. 2594 (2011), the Smeads argue that the Bankruptcy Court is without jurisdiction to

26

27

28
---
[2] "Pursuant to 28 U.S.C. § 157(a), all cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the Bankruptcy Judges of this District . . . ." B.L.R. 5011-1(a).

United States District Court
For the Northern District of California

3

CASE NO. 5:12-cv-04068 EJD
ORDER GRANTING MOTION TO WITHDRAW THE REFERENCE

**United States District Court**
For the Northern District of California

1  adjudicate the removed action, even if some the claims are determined to be "core" claims.

2  O'Hanneson, unsurprisingly, disagrees.

3       The question of whether a claim is a "core" or "non-core" bankruptcy proceeding is a

4  rational starting point for this analysis "since it is upon this issue that questions of efficiency and

5  uniformity will turn." Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures

6  Corp.), 4 F.3d 1095, 1101 (9th Cir. 1993).  This is because "hearing core matters in a district court

7  could be an inefficient allocation of judicial resources given that the bankruptcy court generally will

8  be more familiar with the facts and issues." Id.

9       In the most basic sense, claims that arise under Title 11 of the United State Code or that arise

10  in a Title 11 case are deemed "core" proceedings; claims that are related to a Title 11 case are

11  "noncore" proceedings. Maitland v. Mitchell (In re Harris Pine Mills), 44 F.3d 1431, 1435 (9th Cir.

12  1995).  Congress enumerated a list of what can constitute a "core" proceeding in 28 U.S.C. §

13  157(b)(2).  This list includes, for example, "matters concerning the administration of the estate,"

14  "allowance or disallowance of claims against the estate or exemptions from property of the estate,"

15  "counterclaims by the estate against persons filing claims against the estate," "orders to turn over

16  property to the estate," and "other proceedings affecting the liquidation of the assets of the estate or

17  the adjustment of the debtor-creditor or the equity security holder relationship." 28 U.S.C. §

18  157(b)(2)(A), (b)(2)(B), (b)(2)(C) and (b)(2)(O).  Congress did not provide a similar list non-core

19  proceedings, but "[a]ctions that do not depend on bankruptcy laws for their existence and that could

20  proceed in another court are considered 'non-core.'" Security Farms, 124 F.3d at 1008.

21       The distinction between those claims that are "core" and those that are "non-core" is also

22  important because the classification dictates the bankruptcy court's treatment of the claim.  For core

23  proceedings, the bankruptcy court may issue a final judgment.  28 U.S.C. § 157(c)(1).  For non-core

24  proceedings, the bankruptcy court can only propose findings of fact and conclusions of law to the

25  district court for final resolution. Id.

26       More recently, the core/non-core distinction was the subject of refinement in Stern v.

27  Marshall.  There, a majority of the Supreme Court held that, while 28 U.S.C. § 157(b)(2)(C)

28  provided basic statutory authority for the bankruptcy court to enter a final judgment on a debtor's

4

CASE NO. 5:12-cv-04068 EJD
ORDER GRANTING MOTION TO WITHDRAW THE REFERENCE

1  state-law counterclaim, the Constitution did not.  131 S. Ct. at 2601.  As relevant to this motion, the

2  Court reasoned that the debtor's counterclaim for tortious interference with a gift, as it appeared in

3  the bankruptcy case, was a "core" proceeding as defined by § 157 because it was literally a

4  "counterclaim[] by the estate against persons filing claims against the estate."  Id. at 2604.  But that

5  was not the end of the matter, because the Court went on to conclude that the counterclaim was "in

6  no way derived from or dependent upon bankruptcy law;" it was instead a "state court action that

7  exists without regard to any bankruptcy proceeding."  Id. at 2618.  The counterclaim, therefore, was

8  not "necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy."  Id. at 2611.

9  For this reason, the bankruptcy court was without jurisdiction to enter a final judgment on the

10  counterclaim, regardless of its characterization as a "core" claim under the statute.  Id. at 2620.

11          Stern is instructive, and indeed controlling, of the issue presented by this motion.  Here, the

12  removed action is actually three actions in one, comprised of (1) the original complaint filed by

13  Heller against the Smeads, O'Hanneson and SVAP, (2) the cross-complaint filed by the Smeads and

14  SVAP against O'Hanneson, and (3) the cross-complaint filed by O'Hanneson against the Smeads

15  and SVAP.  Two of these three categories of claims qualify for "core" treatment under § 157(b).

16  Much like the debtor's counterclaim in Stern, O'Hanneson's cross-complaint is, literally, a

17  "counterclaim[] by the estate against persons filing claims against the estate."  28 U.S.C. §

18  157(b)(2)(C).  In addition, now that the Smeads have filed a proof of claim in O'Hanneson's

19  bankruptcy case,[3] their cross-complaint falls within § 157(b)(2)(B) which allows the bankruptcy

20  court to determine the "allowance of disallowance of claims against the estate."  See Continental Ins.

21  Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 671 F.3d 1011, 1021 (9th Cir. 2012); see

22  also Durkin v. Benedor Corp. (In re G.I. Indus. Inc.), 204 F.3d 1276, 1279-80 (9th Cir. 2000) ("The

23  filing of a proof of claim is the prototypical situation involving the 'allowance or disallowance of

24  claims against the estate,' a core proceeding under 28 U.S.C. § 157(b)(2).")

25          The first category of claims - those contained in the original complaint filed by Heller -

26  cannot be similarly categorized under § 157(b), and aside from being removed from state court along

27

28          [3]  It appears the proof of claim was filed on September 4, 2012, approximately one month
after this motion was filed.  See RJN, at Ex. 2.

CASE NO. 5:12-cv-04068 EJD
ORDER GRANTING MOTION TO WITHDRAW THE REFERENCE

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  with the cross-complaints, do not arise under Title 11 or arise in a Title 11 case.  As the <u>Stern</u> court

2  would put it, Heller's claims are "in no way derived from or dependent upon bankruptcy law."

3  <u>Stern</u>, 131 S. Ct. at 2618.  Instead, the claims are part of a "state court action that exists without

4  regard to any bankruptcy proceeding."  <u>Id</u>.  That being the case, the court must classify the Heller

5  claims as "non-core."  Thus, under § 157(c)(1), the bankruptcy court cannot enter a final judgment

6  on Heller's claims, even assuming, *arguendo*, that it can enter a final judgment on the other claims.[4]

7  Moreover, under <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33 (1989), the Smeads are entitled to a

8  jury trial on at least a portion of these claims.

9      It is under these circumstances that the request to withdraw the reference must be considered.

10  Here, as described above, there are "core" claims intertwined with "non-core" claims, some of

11  which are subject to a jury trial.  And a portion of these claims, if not a majority of them, cannot be

12  finally resolved by the Bankruptcy Court.  It is therefore inevitable that, at some point, the reference

13  will need to be withdrawn.

14      The question has become one of timing.  This is true because "[a] valid right to a Seventh

15  Amendment jury trial in the district court does not mean the bankruptcy court must instantly give up

16  jurisdiction and that the action must be transferred to the district court."  <u>In re Healthcentral.com</u>,

17  504 F.3d 775, 788 (9th Cir. 2007).  "Instead . . . the bankruptcy court may retain jurisdiction over

18  the action for pretrial matters."  <u>Id</u>.  But despite this option, the other discretionary factors favor

19  withdrawal at this time.  Considering all of the claims brought by all parties are based entirely in

20  state law and originated in state court, the Bankruptcy Court is in no better position to handle this

21  action prior to trial.  In addition, allowing pretrial matters to proceed in this court, which is notably

22  one that can finally determine this entire action, prevents delay and saves costs since the parties will

23

24      [4]  The Bankruptcy Court's ability to enter a final judgment on the other claims is not entirely
clear.  Here, this court has not been presented with an objection to the Smeads' proof of claim.

25  Without an objection, the claim is deemed allowed without a need for the bankruptcy court to
undergo an adjudicative process.  11 U.S.C. § 502(a).  And without that process, none of

26  O'Hanneson's cross-claims can possibly be resolved as a result.  These procedural circumstances,
then, appear to push this action further into <u>Stern</u> territory, where O'Hanneson's "core" cross-claims

27  are not "necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy."  <u>Stern</u>,
131 S. Ct. at 2611.  For this reason, it is entirely possible that some tribunal other than the

28  Bankruptcy Court will need to enter judgment on Heller's claims *and* on O'Hanneson's cross-
claims.

6

CASE NO. 5:12-cv-04068 EJD
ORDER GRANTING MOTION TO WITHDRAW THE REFERENCE

1  have dealt with one court rather than two.  Furthermore, withdrawing the reference now alleviates

2  any dilatory tactics or forum shopping that may have either motivated the removal or stemmed from

3  it.

4        In sum, the court finds it appropriate to withdraw the bankruptcy reference pursuant to 28

5  U.S.C. § 157(d).  The motion will therefore be granted.

6                                    **IV.   ORDER**

7        The Motion to Withdraw the Reference (Docket Item No. 1) is GRANTED.  The court

8  schedules this action for a Case Management Conference on **April 26, 2013, at 10:00 a.m.**  The

9  parties shall file Joint Case Management Statement on or before **April 19, 2013.**

10  **IT IS SO ORDERED.**

11

12  Dated:  February 21, 2013



13                                    EDWARD J. DAVILA
                                     United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

CASE NO. 5:12-cv-04068 EJD
ORDER GRANTING MOTION TO WITHDRAW THE REFERENCE

**United States District Court**
For the Northern District of California